[No. 3296–2. Division Two. May 3, 1979.]

JEAN ROSS, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

---

*Slade Gorton, Attorney General,* and *Brian J. Coyne, Assistant,* for appellant.

*Dean A. Floyd,* for respondent.

SOULE, J.—The Department of Social and Health Services (DSHS) has appealed the order of the Superior Court which reversed the decision of the State Personnel Board and reinstated Jean Ross, the respondent herein, to her position as a caseworker with the department. Three issues are raised in this appeal: (1) whether respondent's employment was terminated within the 6–month probationary period; (2) whether the failure of DSHS to give respondent 5 days' notice of her dismissal as provided by WAC 356–30–270 makes her dismissal invalid; and (3) whether the Board had authority to exclude "emergency appointment time" from the calculation of respondent's probationary period of employment. We reverse the decision of the Superior Court and reinstate the decision of the State Personnel Board which upheld the termination of respondent's employment.

Jean Ross was first employed by DSHS as a caseworker I on November 1, 1972, under the Public Employment Program in a position authorized by the Emergency Employment Act of 1971. Her position was terminated on November 30, 1973, due to the elimination of funds for the program, but she was placed on a reemployment register in the event that another position became open. On July 22, 1974, she received an emergency appointment to replace Kristen Clark, a caseworker holding a regularly funded position, who was absent on maternity leave. This appointment was extended another 30–day period which was to end on September 22, 1974. In the meantime, Ms. Ross was certified to fill a caseworker II position which was to be vacated on September 23, 1974. Although the official date of her appointment was Monday, September 23, respondent actually started to perform some of the duties relating to the position on Thursday and Friday, September 19 and 20.

On these dates she worked with the departing caseworker for purposes of orientation.

On the morning of March 21, 1975, respondent was notified that she was being dismissed from the caseworker II position effective at 5 p.m. on that date. She appealed her dismissal to the State Personnel Board. The Board upheld her dismissal after determining that she was still a probationary employee on the day of her dismissal. Thus, under WAC 356–30–270(2)[1] she did not have a right to appeal her dismissal, and the Board did not have jurisdiction to hear her appeal.

Ms. Ross sought review of the Board's decision in Superior Court. The Superior Court reversed the decision of the Board and reinstated Ms. Ross to her position. The Department of Social and Health Services now appeals the decision of the Superior Court claiming that the Superior Court erred in determining that respondent was no longer a probationary employee on the date of her dismissal and that she had a right to appeal her termination to the State Personnel Board. As a preliminary matter, we note that since the Superior Court reviewed the decision of an administrative agency, we are not bound by the Superior Court's determinations but apply our standard of review directly to the record of the administrative proceedings. E.g., *Standow v. Spokane*, 88 Wn.2d 624, 637, 564 P.2d 1145 (1977); *State Ferries v. International Organization of Masters, Mates & Pilots*, 20 Wn. App. 887, 890, 584 P.2d 397 (1978).

We agree with DSHS that the Superior Court erred in finding that respondent was not a probationary employee when she received the notice of termination on March 21, 1975, and that the State Personnel Board had jurisdiction to hear the appeal of her termination.[2] WAC 356–06

---

[1]WAC 356–30–270(2) provides in pertinent part: "An employee dismissed during a probationary period shall not have the right to appeal the dismissal."

[2]The Department of Social and Health Services specifically challenges the Superior Court's finding of fact No. 3 and conclusion of law No. 6. Finding of fact

–010[3] defines the probationary period as a 6–month trial period following certification and appointment to the classified service. During the probationary period employment may be terminated without the right of appeal to the State Personnel Board. WAC 356–30–270(2). Certification occurs when the agency is provided with the names of the certified candidates eligible to be considered for vacancies. WAC 356–06–010. Appointment, however, is not defined in the regulations. Respondent argued and the Superior Court agreed that, since she actually began to perform duties relating to the caseworker II position on September 19, 1974, the 6–month probationary period began to run on that date and ended on March 18, 1975. Thus, she was no longer a probationary employee on March 21, 1975, and had a right to appeal her termination to the State Personnel Board.

---

No. 3 reads as follows: "The evidence in the transcript of the record before the Personnel Board established and the Court specifically finds that Jean Ross was actually performing specified duties on September 19th and 20th, 1974, in the position being vacated by the individual scheduled to begin a two–year educational leave. The Appellant's probationary period commenced to run on September 19, 1974, and was concluded on March 18, 1975."

Conclusion of law No. 6 reads as follows: "The time at which an employee actually commences performance of duties and not the time at which underlying paperwork is processed, determines the commencement of a probationary period of employment. *State ex rel. Moulton v. Spokane,* 174 Wash. 679." The reliance of the Superior Court upon *State ex rel. Moulton v. Spokane,* 174 Wash. 679, 26 P.2d 89 (1933), to support its conclusion is erroneous. *State ex rel. Moulton, supra,* stands for the principle that the summary dismissal of a probationary employee must occur within 6 months from the time of regular appointment. Rather than providing support for respondent's theory, *Moulton* refers to the *effective date* of the employee's appointment as the date on which the probationary period begins. It is not authority for the principle that the probationary period may begin prior to the official effective date of employment when the employee starts to perform her new duties before the official effective date in conjunction with the departing employee for purposes of orientation.

[3]The definition of probationary period contained in WAC 356–06–010 reads as follows: "PROBATIONARY PERIOD—The trial period of employment following certification and appointment to, or reemployment in, the classified service and continuing for six months."

 We do not agree. A careful reading of the definition of "probationary period" contained in WAC 356–06–010 leads to the conclusion that the time of appointment, although not clearly defined, refers to the official date of employment as set forth in the employee's personnel records. Plaintiff's payroll records show that her emergency appointment terminated on September 22, 1974, and that her probationary appointment to the caseworker II position began on September 23, 1974.[4] Plaintiff was paid under the emergency category through Friday, September 20; the caseworker II position did not become vacant until Monday, September 23, and the departing caseworker officially remained at work through Friday, September 20. The fact that respondent performed some of the duties of the caseworker II position prior to September 23 for purposes of orientation is of no importance in determining when the probationary period began. We hold that respondent's probationary period for the caseworker II position began on September 23, 1974, the date that she officially commenced work in the position according to her payroll records. Since she remained a probationary employee for 6 months until the close of business on March 22, 1975, she was a probationary employee on March 21, 1975, the date she received the notice of termination. Therefore, she was prohibited from appealing her termination to the State Personnel Board by WAC 356–30–270(2), and the Board properly dismissed her appeal.

In her brief respondent argues that her dismissal was void since she did not receive 5 days' notice as required by WAC 356–30–270(1).[5] This regulation states that an

---

[4]The State of Washington Personnel/Payroll Action Form introduced at the Personnel Board hearing as exhibit 1 states the effective date of respondent's probationary appointment to the position of caseworker II as September 23, 1974.

[5]WAC 356–30–270 provides in pertinent part: "(1) An employee may be dismissed during a probationary period after being given written notice five working days prior to the effective date of dismissal. However, if the agency believes the good of the service requires the immediate dismissal of the probationary

employee may be dismissed during the probationary period after being given written notice 5 working days prior to the effective date of dismissal. The regulation also provides that, if immediate dismissal of a probationary employee is required, written notice of only 1 full working day prior to the effective date of dismissal need be given.

■ The remedy for the failure of the agency to provide 5 days' notice is payment of salary for up to 5 days during which the employee would have worked had proper notice been given. WAC 356–30–270(2). We find that the Department of Social and Health Services complied with this regulation, and that respondent's dismissal is not void. Respondent received notice of dismissal by way of a letter dated March 20, 1975, on the morning of March 21, 1975. The letter stated that her dismissal was effective at 5 p.m. on March 21. Although respondent did not receive 5 days' notice, DSHS did pay her an additional 4 days' salary as required by WAC 356–30–270(2). WAC 356–30–270(1) clearly empowers the agency to grant less than 5 days' notice when immediate dismissal is deemed necessary. Since a civil service employee has only those rights specifically conferred by statute or regulation, e.g., Lumpkin v. Department of Social & Health Servs., 20 Wn. App. 406, 410, 581 P.2d 1060 (1978), respondent has no right to demand reinstatement or anything except the severance pay which she has already received. Further, the obvious purpose of the 5–day notice requirement contained in WAC 356–30–270(1) is to allow the dismissed employee some limited form of economic shelter from the adverse effects of a dismissal. This same purpose is advanced when the

employee, written notice of only one full working day prior to the effective date of the dismissal will be required. . . .

"(2) An employee dismissed during a probationary period shall not have the right to appeal the dismissal. When proper advance notice of the dismissal is not given, the employee may enter an appeal for payment of salary for up to five days which the employee would have worked had proper notice been given. If such a claim is sustained, the employee will be entitled to the appropriate payment of salary but will not be entitled to reinstatement."

employee is dismissed with only 1 day's notice, as expressly authorized by WAC 356–30–270(1), and is paid compensation for an additional 4 days as authorized by WAC 356–30–270(2).

Finally, respondent argues that the State Personnel Board did not have authority to exclude "emergency appointment time," the 60–day period from July 22 to September 22, 1974, when she temporarily replaced Kristen Clark, from the calculation of the probationary period for the caseworker II position. WAC 356–30–050(3) states that "Service in an emergency appointment shall not constitute a part of the employee's probationary service." This regulation was promulgated pursuant to RCW 41.06.150 which grants the Personnel Board authority to adopt rules consistent with "the best standards of personnel administration." Included in this delegation of authority is the power to adopt rules setting "probationary periods of six months." Respondent argues that the statute limits an employee's probationary period to a total 6 months which, for her, began on July 22. Thus, in effect, respondent claims that WAC 350–30–050(3), which excludes emergency appointment time from calculation of the probationary period, is invalid since it conflicts with the limits of delegated power set forth in the rule's enabling act.

■ We do not agree with this contention. We first note that agency rules are presumed to be valid, with the burden placed upon the person asserting the invalidity of the rule to present compelling reasons why the rule is in conflict with the intent and purposes of the enabling legislation. *E.g., Lumpkin v. Department of Social & Health Servs., supra* at 409. *See also Anderson, Leech & Morse, Inc. v. State Liquor Control Bd.,* 89 Wn.2d 688, 575 P.2d 221 (1978). Respondent has not carried this burden. Respondent's emergency appointment on July 22, 1974, was made so that she could *temporarily* replace Ms. Clark who had taken maternity leave. Ms. Clark fully intended to return to her position at the end of her leave. Neither she nor DSHS nor Ms. Ross herself expected that respondent would have

the opportunity to be considered for permanent employment in this position.

The purpose of probationary employment is to provide a trial period of employment during which the employer may observe the performance of the probationary employee before conferring the rights of permanent status. *McCabe v. Spokane County Civil Serv. Comm'n,* 14 Wn. App. 864, 545 P.2d 575 (1976); *Tacoma v. Civil Serv. Bd.,* 6 Wn. App. 600, 494 P.2d 1380 (1972). *See also* WAC 356–06–010. When an employee is only substituting for another employee on a temporary basis, all persons concerned expect the absent employee to return. Thus, supervisory personnel would only be concerned with the immediate need to fill the duties of the absent employee; they would not normally be observing and evaluating the substitute employee, as they would the probationary employee, with the expectation that the emergency employee would have the opportunity to convert her status to that of a permanent employee upon completion of satisfactory service for a given period. In other words, the focus of the employer would be upon the immediate need to fill the position—not upon the performance of the temporary employee. However, when an employee is certified to fill a permanent position and is placed upon probationary status, as respondent was on September 23 when she assumed the caseworker II position, the expectation arises that such person's performance on the job will be evaluated by her supervisors who will decide during the probationary period whether she should have permanent status conferred upon her.

Due to the different expectations surrounding an emergency employee and a probationary employee, we find no conflict between WAC 356–30–050(3) and RCW 41.06-.150. The statute's delegation of authority to the State Personnel Board to adopt rules relating to "probationary periods of six months" does not require that emergency appointment time be included when the probationary period is calculated. We hold that WAC 356–30–050(3) provides authority for the Board's decision to exclude the

time that respondent spent as an emergency employee and its conclusion that her probationary period began on September 23, 1974.

We reverse the order of the Superior Court holding that the Personnel Board had jurisdiction to hear the appeal of respondent's dismissal and affirm the decision of the Board which found that it did not have jurisdiction to hear the appeal and which affirmed respondent's dismissal.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied May 31, 1979.

Review denied by Supreme Court September 7, 1979.